UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AGROLIPETSK, LLC, a Russian Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | CASE NO. l:16-cv-03414-SEB-MPH |
| v. | ) ) | HON SARAH EVANS BARKER |
| DOW AGROSCIENCES, LLC, an Indiana Limited Liability Company, and AGRIGENETICS, INC. d/b/a MYCOGEN SEEDS, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT

Defendants Dow AgroSciences LLC ("DAS") and Agrigenetics, Inc. d/b/a Mycogen

Seeds ("Mycogen"), for their Answer to Plaintiff's First Amended Complaint, state as follows:

### INTRODUCTION

1.      This case involves breach of implied warranty and Indiana Deceptive Consumer

Sales Act violations by global agro-business Defendants that sold defective lots of hybrid

sunflower seeds to a Russian farming company.

RESPONSE:   With respect to the material allegations of paragraph 1, Defendants admit

only that Plaintiff has alleged claims for breach of implied warranty and Indiana Deceptive

Consumer Sales Act violations.  Defendants deny that this case otherwise "involves" breach of

implied warranty under the Indiana Uniform Commercial Code and Indiana Deceptive Consumer

Sales Act violations because neither statute can apply to the transaction and circumstances

alleged by Plaintiff.

2.      After inspecting Plaintiff s fields while Defendants' plants were still growing in the ground, Defendants' managerial employees acknowledged responsibility for Plaintiff s losses and eventually agreed on the amount of the loss but then refused to pay compensation.

RESPONSE:   Defendants deny the material allegations of paragraph 2.

## PARTIES AND JURISDICTION

3.      Plaintiff, Agrolipetsk, LLC (hereinafter "AGL"), is a limited liability farming company organized under the laws of the Russian federation, with its principal place of business in Lipetskaya District, Russian Federation. The Russian Federation is a foreign state within the meaning of 28 U.S.C. § 1332(a)(2) and (a)(4) and 28 U.S.C. §1603(a). (Footnote omitted).

    a.   The only member of AGL is LLC Managing Company AGRO-Invest (hereinafter "Agro-Invest"), a limited liability company organized under the laws of the Russian Federation with its registered address and principal place of business in Voronezh, Russian Federation.

    b.   The members of AGRO-Invest are LLC Managing Company Agro-Invest Regions (hereinafter "Agro-Invest Regions") and Planalto Enterprises, Ltd (hereinafter "Planalto").

    c.   Agro-Invest Regions is a limited liability company organized under the laws of the Russian Federation with its registered address and principal place of business in Voronezh, Russian Federation. Agro-Invest Regions is itself owned by Planalto and Agro-Invest. (Agro-Invest Regions and Agro-Invest each own a percentage of the other).

    d.   Planalto is a Cyprus limited liability company, and has its principal place of business in Nicosia, Cyprus.

2

e. Planalto is wholly owned by Black Earth Farming Limited (hereinafter "BEF"), www. blackearthfarming, com, a Jersey corporation with publicly traded stock, listed in the form of Swedish Depository Receipts on the Nasdaq Stockholm Exchange.

f. BEF is organized under the laws of Jersey, Channel Islands with its principal place of business in St. Helier, Jersey, Channel Islands, a British Crown Dependency.

RESPONSE:   Defendants admit the material allegations of paragraph 3.

4.      Defendant, Dow AgroSciences LLC (hereinafter "DAS"), is a Delaware limited liability company and has its principal place of business and global offices at 9330 Zionsville, Road, Indianapolis, Indiana 46268.

RESPONSE:   Defendants admit the material allegations of paragraph 4.

5.      The current members of DAS include, Rofan Services, Inc., a Delaware corporation with its principal place of business in Michigan, Centen Ag Inc., a Delaware Corporation with its principal place of business in Michigan, and Mycogen Corporation, a California corporation with its principal place of business in Indiana.

RESPONSE:   Defendants admit the material allegations of paragraph 5.

6.      Agrigenetics, Inc., is a Delaware Corporation with its principal place of business in Indiana.

RESPONSE:   Defendants admit the material allegations of paragraph 6.

7.      Agrigenetics Inc. does business under the assumed name of Mycogen Seeds.

RESPONSE:   Defendants admit the material allegations of paragraph 7.

3

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1332 (a)(2) and (a)(4) because the Defendants do business within and are subject to the general jurisdiction of the State of Indiana.

RESPONSE:   Defendants admit the material allegations of paragraph 8.

9.      The parties are citizens of different states and a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

RESPONSE:   Defendants admit the material allegations of paragraph 9.

10.      This court also has jurisdiction pursuant to 15 U.S.C. § 2310(d) under the Magnuson-Moss Warranty Act.

RESPONSE:   Defendants deny the material allegations of paragraph 10 because the Act specifically states that "nothing in this chapter shall apply to seed for planting." 15 U.S.C. § 2311(a)(2).

11.      Venue is proper in this District because under 28 U.S.C. § 1391 (a) through (c) because a substantial part of the events giving rise to the claims occurred in this District and because Defendants reside in this District.

RESPONSE:   With respect to the material allegations of paragraph 11, Defendants deny that a substantial part of the events giving rise to the claims occurred in this District but admit that venue is otherwise proper under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

**BACKGROUND**

12.      Plaintiff, AGL, is an agricultural and farming company that operates in the Lipetsk region of Russia. It is part of the Black Earth Farming Group, an agribusiness conglomerate that was one of the first foreign-financed companies to invest in the Russian agricultural sector.

4

RESPONSE:   Defendants admit the material allegations of paragraph 12.

13.     One of AGL's principal crops is sunflower seeds, including high oleic sunflower seeds, which are planted and grown by AGL for consumer use.

RESPONSE:   With respect to the material allegations of paragraph 13, Defendants admit only that one of Plaintiff's principal crops is sunflower seeds, including high oleic sunflower seeds, but Defendants deny that Plaintiff grows those seeds for consumer use.

14.     DAS is a global agribusiness company with subsidiaries and/or divisions in the United States, Europe and Russia.

RESPONSE:   With respect to the material allegations of paragraph 14, Defendants admit only that DAS has subsidiaries in the United States and that it has only one direct subsidiary in Europe, but deny that DAS has any direct subsidiaries in Russia.  Defendants further deny that DAS has divisions in the United States, Europe or Russia.

15.     Mycogen Seeds grows, markets and sells a number of different varieties of hybrid sunflower seeds for and on behalf of DAS. The sunflower seeds are sold under the label "Dow".

RESPONSE:   With respect to the material allegations of paragraph 15, Defendants admit only that Mycogen Seeds grows, markets, and sells a number of different varieties of hybrid sunflower seeds and that they are sometimes sold in bags that have labels upon which the word "Dow" appears.  Defendants deny any material allegation in paragraph 14 not specifically admitted.

16.     Defendants grow in the United States and then market and sell a number of hybrid sunflower seed varieties. One of the U.S. varieties grown by Defendants is Variety 341 which is also designated on shipping and sales documents as 8H341CLDM.

RESPONSE:   With respect to the material allegations of paragraph 16, Defendants admit only that Mycogen grows in the United States and then markets and sells a number of hybrid sunflower seed varieties, one of which was Variety 341, also designated as 8H341CLDM. Defendants deny any material allegations in paragraph 16 not specifically admitted.

17.     Variety 341 (8H341CLDM) seeds are sold by Defendants under the Dow label.

RESPONSE:   With respect to the material allegations of paragraph 17, Defendants admit only that Mycogen sold Variety 341 (8H341CLDM) seeds that were sometimes sold in bags that have labels upon which the word "Dow" appears.  Defendants deny any material allegations in paragraph 17 not specifically admitted.

18.     In March, 2015, Dow Variety 341 (8H341CLDM) seeds, grown in the United States by the Defendants, were sold to AGL by LLC Advag, an independent Russian agricultural firm. The sale was documented by a written supply agreement between AGL and LLC Advag. DAS was not a party to the supply agreement **(Exhibit 1).**

RESPONSE:   With respect to the material allegations of paragraph 18, Defendants admit only that in March, 2015 Variety 341 (8H341CLDM) seeds grown in the United States by Mycogen were sold to Plaintiff by Advag LLC, an independent Russian agricultural firm and that the sale was documented by a written supply agreement between Plaintiff and Advag LLC, attached as Exhibit 1.  Defendants further admit that DAS was not a party to the supply agreement and deny that Mycogen was a party to the supply agreement.

19.     The Variety 341 seeds were packaged by or at the direction of Defendants in bags labeled "Dow Seed" and were identified as United States of America Certified, First Generation with a minimum standard germination of 85%.

RESPONSE:   With respect to the material allegations of paragraph 19, Defendants deny that DAS participated in the alleged conduct.  Defendants otherwise admit the material allegations of paragraph 19.

20.    In connection with the sale by LLC Advag, AGL received Certificates of Conformity that confirmed Dow Variety 341 (8H341CLDM) seeds were grown in the United States with test results demonstrating 92% germinating capacity **(Exhibit 2).**

RESPONSE:   With respect to the material allegations of paragraph 20, Defendants admit only that BDA Capital, LLC received and then provided the Certificates of Conformity attached as Exhibit 2.  Defendants deny any material allegation of paragraph 20 not specifically admitted.

21.    The sale did not include any written warranty limitations or written disclaimers issued by DAS.

RESPONSE:   Defendants admit only that DAS itself did not include any written warranty limitations or written disclaimers in connection with the sale of sunflower seeds by Advag LLC to Plaintiff and further affirmatively allege that DAS was not a party to and did not participate in that transaction.

22.    AGL planted the seeds in the Lipetsk region of Russia over approximately 5,700 acres in late April and early May, 2015.

RESPONSE:   Defendants admit the material allegations of paragraph 22.

23.    AGL has purchased Dow Defendants' Variety 341 seeds in recent years and has successfully planted and harvested this variety in the Lipetsk region. However, this time, the Variety 341 sunflower plants, planted in the same region, developed with fully formed pericarps but empty embryo sacs. There were no sunflower seeds inside.

RESPONSE:   With respect to the material allegations of paragraph 23, Defendants admit only that Plaintiff has purchased Variety 341 seeds in recent years that originated from Mycogen and that it has successfully planted and harvested this variety in the Lipetsk region.  Defendants further admit only that this time the Variety 341 sunflower plants, planted in the same region, developed with fully formed pericarps but empty embryo sacts in some plants and that there were reduced numbers of sunflower seeds inside.  Defendants deny any material allegation of paragraph 23 not specifically admitted.

24.     Without sunflower seeds, Variety 341 crops had no commercial value and were effectively worthless.

RESPONSE:   Defendants admit the material allegations of paragraph 24.

25.     Other varieties of sunflower seeds, planted in adjoining field during the same growing season, developed normally with complete embryo sacs and seeds.

RESPONSE:   Defendants lack knowledge or information sufficient to form a belief about the truth of the material allegations in paragraph 25.

26.     While the affected sunflower seeds were still in the fields, AGL contacted Defendant, DAS. Dr. Andre Tarabrin, Defendants' Territorial Seeds Representative, employed by DAS or by a wholly owned subsidiary of DAS, inspected the crop and prepared a Customer Quality Complaint form, dated August 15, 2015 **(Exhibit 3).** Defendants' representative confirmed that AGL's projected loss approximated 90% of the yields in the affected fields.

RESPONSE:   With respect to the material allegations in paragraph 26, Defendants admit only that Dr. Andrey Tarabrin inspected the crop and prepared the Customer Quality Complaint form attached as Exhibit 3.  Defendants deny any material allegations of paragraph 26 not specifically admitted.

27.     In addition, DAS, or its wholly owned subsidiary, retained SGS, an international inspection, testing and certification firm, to monitor the harvest, check movements, weights and moistures. On November 5, 2015, Denis Striga, DAS' Sales Leader, employed by DAS or by its wholly owned subsidiary, produced a copy of the report and sent it to Plaintiff s Technical Director at Black Earth Farming.

RESPONSE:   With respect to the material allegations of paragraph 27, Defendants admit only that SGS is an international inspection, testing and certification firm that monitored the harvest, checked movements, weights and moistures and that it prepared a report that Denis Striga produced and sent to Plaintiff's Technical Director at Black Earth Farming.  Defendants deny any material allegations of paragraph 27 not specifically admitted.

28.     Upon reviewing the report, Plaintiff and Defendant DAS' representative both agreed on the difference in volume between affected and unaffected crops at 3,662.22 tons. DAS also admitted responsibility for the sunflower crop loss:

> First of all thank you for your time and attitude regarding the issue we have and for your constructive position. Based on the SGS monitoring report and on the information in your previous mail we would agree with the difference in the yield and in the amount in rubles that is 90 049 148, 38 rub [$1,374,796 US],

Email from Denis Striga, Sales Leader, Dow AgroSciences, EEC, dated November 19, 2015 **(Exhibit 4).**

RESPONSE:   With respect to the material allegations of paragraph 28, Defendants admit only that this paragraph quotes in part an email from Denis Striga dated November 19, 2015 which is attached as Exhibit 4.  Defendants deny that DAS or any entity related to or affiliated with DAS admitted responsibility for the sunflower crop loss and further deny any material allegation of paragraph 28 not specifically admitted.

9

29.     Although AGL has repeatedly requested DAS to make good on its agreement to compensate AGL for its losses, DAS has refused to do so.

RESPONSE:   With respect to the material allegations of paragraph 29, Defendants deny that DAS or any entity related to or affiliated with DAS made any agreement to compensate Plaintiff for its alleged losses.  Defendants admit that Plaintiff has repeatedly requested DAS to compensate it, despite no agreement to do so, and admit that DAS has refused to do so.  Defendants further deny any material allegation of paragraph 29 not specifically admitted.

30.     On January 20, 2016, Richard Warburton, the chief executive officer of AGL's parent corporation, Black Earth Farming, emailed Tim Hassinger, DAS's chief executive officer, at DAS's headquarters in Indianapolis. His email stated in part:

> We feel very much let down by Dow in this instance. The extent of the claim was established jointly by Dow and ourselves with both parties agreeing on the value of the settlement required. We want no more than the sum we have lost as a result of using your seed variety.
>
> Regretfully it seems that you are giving us no choice other than for us to press our claim more forcefully. I fail to see how a formal legal dispute with one of the best known global farming companies, played out in the public domain can be in your interests.

**(Exhibit 5)**.  He never received a response.

RESPONSE:   With respect to the material allegations of paragraph 30, Defendants admit only that this paragraph quotes in part a January 20, 2016 email from Richard Warburton to Tim Hassinger, DAS's chief executive officer, at DAS's headquarters in Indianapolis, which is attached as Exhibit 5.  Defendants deny any material allegation of paragraph 30 not specifically admitted.

31.     On information and belief, Defendants were aware of reports of other Variety 341 sunflower seed failures with plants developing with fully formed pericarps but empty embryo sacs and no sunflower seeds inside prior to the March, 2015, purchase date, identified above.

RESPONSE:   Defendants deny the material allegations of paragraph 31.

32.     On information and belief, prior to the March, 2015, purchase date, identified above, Defendants received reports of flaws in Variety 341 sunflower seeds sold to other growers, including growers in adjoining regions in Russia, and did not disclose the existence of this varietal flaw to Plaintiff and other growers but, instead, attempted to buy off individual growers with replacement seed which did not come close to full and complete compensation.

RESPONSE:   Defendants deny the material allegations of paragraph 32.

33.     When Defendants learned that sunflower seed growers were suffering financial losses because of the varietal 341 flaw at one or more points in time prior to the March, 2015, purchase date, identified above, they quietly removed this variety from their marketing programs and web sites without disclosing the existence of the varietal flaw.

RESPONSE:   Defendants deny the material allegations of paragraph 33.

34.     Before filing suit, Plaintiff contacted Defendant, Dow AgroSciences, presented its case, and provided Defendant with an opportunity to confirm or deny the factual basis for Plaintiff s claim:

> [Dow AgroSciences] implies that there is a fundamental misunderstanding with regard to Dow's involvement in the development and marketing of hybrid sunflower seeds and, specifically, Variety 341:
>
> (a)  [Defendant] intimates that Dow AgroSciences or one of its subsidiaries did not develop this hybrid sunflower seed and refer to it as Variety 341. Your website suggests otherwise. If your letter response is correct then please identify the entity that did develop this variety.

    (b)  Your letter also seems to suggest that the sunflower seeds AGL purchased were first grown in Switzerland or in Russia. Is that true? Where were the seeds in fact grown and which entity grew them?

    (c)  Your letter does not disclose whether Dow AgroSciences or a subsidiary has ever received any reports of crop failures involving Variety 341 sunflower seeds. Has Dow AgroSciences or a subsidiary received reports of Variety 341 crop problems? Why was Variety 341 removed from the market?

Before we decided to write our two letters and prepare a federal court complaint, we investigated all of these matters.

Now it's your opportunity to correct the record if you know for a fact that Dow AgroSciences or its wholly owned subsidiaries did not develop this hybrid variety in the United States, grow the seed in the United States, sell it to customers in Russia and then withdraw it from the market as a result of crop failures.

Letter to Dow AgroSciences dated October 5, 2016 (**Exhibit 6**).

<u>RESPONSE:</u>   With respect to the material allegations in paragraph 34, Defendants admit only that this paragraph quotes in part a letter dated October 5, 2016 from Plaintiff's counsel to Joseph R. Alberts, Senior Counsel, Dow AgroSciences LLC, which is attached as Exhibit 6. Defendants deny any material allegation of paragraph 34 not specifically admitted.

35.    Defendant did not "correct the record", deny Plaintiff's statements or substantively respond to Plaintiff's request.

<u>RESPONSE:</u>   With respect to the material allegations of paragraph 35, Defendants deny any allegations, inference or implication that DAS had any duty or obligation to "correct the record," and further deny that DAS did not deny Plaintiff's statements in Exhibit 6, and deny that DAS did not substantively respond to Exhibit 6.

36.    Defendants have refused to compensate AGL for its financial losses in spite of admitting responsibility and in spite of repeated requests for payment.

RESPONSE:   With respect to the material allegations of paragraph 36, Defendants deny that either of them, or that any entity related to or affiliated with them,  admitted responsibility for Plaintiff's alleged financial losses.  Defendants admit only that Plaintiff has made repeated requests for payment and that those requests have been declined.

37.     Although Defendants direct and control the operations of certain wholly owned subsidiaries in Russia, they do not own property directly within Russia and are not subject to the jurisdiction of Russian courts.

RESPONSE:   With respect to the material allegations of paragraph 37, Defendants admit only that they do not own property directly within Russia and are not subject to the jurisdiction of Russian courts.  Defendants deny that DAS has any direct wholly owned subsidiary in Russia, and deny that Mycogen has any direct or indirect subsidiary in Russia.  Defendants deny any material allegations in paragraph 37 not specifically admitted.

38.     The Russian legal system and courts in the Lipetsk region handle contract disputes, however, Russian law does not recognize a right of recovery for a remote purchaser of commercial goods, such as Plaintiff who does not have a contractual agreement with the original seller of the commercial goods and is not in privity with an original seller of the commercial goods.

RESPONSE:   Defendants admit the material allegations of paragraph 38.

39.     The only remedy available to AGL for losses resulting from a varietal flaw that is the responsibility of the Defendants is in a U.S. court that can exercise general jurisdiction over DAS and Mycogen Seeds.

RESPONSE:   Defendants deny the material allegations of paragraph 39.

13

## COUNT I - BREACH OF IMPLIED WARRANTY

40.     Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if those averments were set forth herein in their entirety.

RESPONSE:   With respect to the material allegations of paragraph 40, Defendants repeat and reallege each response to each preceding paragraph as if set forth in full herein.

41.     Defendants are "merchants" within the meaning of the [sic] §2-104, of the Indiana Uniform Commercial Code, I.C. 26-1-2-104, as well as "sellers" within the meaning of I.C. 26-2-103(l)(d).

RESPONSE:   With respect to the material allegations of paragraph 41, Defendants deny that they were "merchants" or "sellers" within the meaning of the Indiana Uniform Commercial Code because that statute does not apply to the transaction and circumstances alleged by Plaintiff.

42.     The sunflower seeds sold by Defendants are goods within the meaning of I.C. 26-1-2-105 and were subject to implied warranties of merchantability under §2-314, of the Indiana Uniform Commercial Code, I.C. 26-1-2-314.

RESPONSE:   With respect to the material allegations of paragraph 42, Defendants deny that the sunflower seeds originating from Mycogen were goods within the meaning of Ind. Code § 26-1-2-105 that were subject to implied warranties of merchantability under § 2-314, of the Indiana Uniform Commercial Code because that statute does not apply to the transaction and circumstances alleged by Plaintiff.

43.     Defendants' sunflower seeds were defective, did not perform as warranted, produced empty embryo sacs with no seeds and, as a consequence, were of no commercial value.

14

RESPONSE:   With respect to the material allegations of paragraph 43, Defendants deny that either of them made any warranty of performance with respect to Plaintiff's purchase of Variety 341 sunflower seeds from Advag LLC and further deny that the Indiana Uniform Commercial Code is a source of any duties, rights, or remedies with respect to that transaction.

44.     Defendants were seasonably notified of the defective and non-conforming Variety 341 sunflower seeds as soon as the absence of embryos was detected and while the seeds were growing in Plaintiff s fields.

RESPONSE:   Defendants deny the material allegations of paragraph 44 and further deny that the Indiana Uniform Commercial Code applies to the transaction and circumstances alleged by Plaintiff.

45.     Upon being notified of the non-conforming sunflower seeds, Defendants made no effort to cure the non-conforming goods within the meaning of §2-508, of the Indiana Uniform Commercial Code, I.C. 26-1-2-508.

RESPONSE:   With respect to the material allegations of paragraph 45, Defendants deny being notified of non-conforming sunflower seeds and further deny that the Indiana Uniform Commercial Code is a source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

46.     Defendants conducted surveys of the crop and brought in their own experts to review the extent of AGL's loss.

RESPONSE:   Defendants deny the material allegations of paragraph 46.

47.     Defendant's own experts confirmed that losses approximated 90% of the yields in the affected fields.

RESPONSE:   Defendants deny the material allegations of paragraph 47.

15

48.     As a direct and proximate result of Defendants' various breaches of warranty, Plaintiff has suffered damages, including inspection, transportation, and storage costs, incidental and consequential damages, including lost profits and other incidental and consequential damages, as well as attorneys' fees and other expenses.

RESPONSE:   With respect to the material allegations of paragraph 48, Defendants deny that either of them made or breached any warranty to Plaintiff, and further deny that the Indiana Uniform Commercial Code is a source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff and therefore deny that Plaintiff has suffered any damages as a "result of Defendants"  various breaches of warranty

**COUNT II - INDIANA DECEPTIVE CONSUMER SALES ACT**

49.     Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if those averments were set forth herein in their entirety.

RESPONSE:   With respect to the material allegations of paragraph 49, Defendants repeat and reallege each response to each preceding paragraph as if set forth in full herein.

50.     Pursuant to the Indiana Deceptive Consumer Sales Act (hereinafter "DCSA"), the sale of sunflower seeds is a "consumer transaction" within the meaning of I.C. 24-5-0.5-2(a)(l) because the seeds were being used primarily for agricultural purposes.

RESPONSE:   Defendants deny the material allegations of paragraph 50 because the Indiana Deceptive Consumer Sales Act does not apply to the transaction and circumstances alleged by Plaintiff.

51.     Plaintiff qualifies as a "person" within the meaning of the DCSA pursuant to I.C. 24-5-0.5-2(a)(2).

16

RESPONSE:   Defendants deny the material allegations of paragraph 51 because the Indiana Deceptive Consumer Sales Act does not apply to the transaction and circumstances alleged by Plaintiff.

52.     Defendants qualify as "suppliers" within the meaning of I.C. 24-5-0.5-2(a)(3).

RESPONSE:   Defendants deny the material allegations of paragraph 52 because the Indiana Deceptive Consumer Sales Act does not apply to the transaction and circumstances alleged by Plaintiff.

53.     Defendants hold themselves out as experts in the development, production and sale of hybrid sunflower seeds.

RESPONSE:   With respect to the material allegations of paragraph 53, Defendants admit only that Mycogen holds itself out as an expert in the development and production of hybrid sunflower seeds.  Defendants deny any material allegation of paragraph 53 not specifically admitted.

54.     By crossing different types or "lines" of sunflower seeds, using sophisticated methods of pollination, Defendants were able to develop a number of different hybrid varieties, including Variety 341, which was purchased by Plaintiff and other growers in Europe, Ukraine, and Russia.

RESPONSE:   With respect to the material allegations of paragraph 54, Defendants admit only that Mycogen, by using sophisticated methods, has been able to develop a number of different hybrid varieties, including Variety 341, which was purchased by Plaintiff and other growers in Europe, Ukraine and Russia.  Defendants deny any material allegation of paragraph 54 not specifically admitted.

17

55.     Defendants have committed unfair, abusive, and/or deceptive acts, omissions, and/or practices in connection with a consumer transaction all in violation of I.C. 24-5-0.5-3(a).

RESPONSE:   Defendants deny the material allegations of paragraph 55 and further deny that the Indiana Deceptive Consumer Sales Act is a source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

56.     In addition, Defendants' unfair, abusive, and/or deceptive acts, omissions, and/or practices include both implicit and explicit misrepresentations, all in violation of I.C. 24-5-0.5-3(a).

RESPONSE:   Defendants deny the material allegations of paragraph 56 and further deny that the Indiana Deceptive Consumer Sales Act is a source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

57.     Defendants' unfair, abusive, and/or deceptive acts, omissions, and/or practices as well as Defendants' implicit and explicit misrepresentations include, *inter alia,* the following, all if which occurred on information and belief prior to the sale of the Variety 341 seeds complained of herein:

    a.  Defendants knew or should have known that the processes and procedures used to develop Variety 341 could result in a varietal defect, preventing the development of embryos (seeds) without which a sunflower seed crop has no commercial value.

    b.  Despite Defendants' knowledge regarding the fact that Variety 341 could result in a varietal defect thereby preventing the development of embryos (seeds), Defendants made explicit untrue statements of a material fact concerning Variety 341's commercial merchantability.

    c.  Moreover, despite Defendants' knowledge regarding the fact that Variety 341 could result in a varietal defect thereby preventing the development of embryos (seeds), Defendants made implicit misrepresentations by omitting to state material facts necessary in order to make the consumer transaction not deceptive.

    d.  Defendants failed to conduct necessary and sufficient pre- and post-production testing to confirm that Variety 341 lots did not contain any varietal flaws and

18

would in fact mature with completed embryo sacs filled with seeds.

e.  Despite Defendants' failure to conduct the above-mentioned pre- and post-production testing, Defendants advertised Variety 341 seeds on its websites and made both implicit and explicit misrepresentations of a past or existing fact regarding, *inter alia,* (1) the absence of known defects and the results of testing, (2) that Variety 341 seeds were merchantable, of fair and average quality, and would provide expected and predictable results, up to and including predictable product yields.

f.  Defendants have acted unfairly, abusively, and unconscionably by intentionally maintaining a global policy of refusing to financially compensate growers who planted defective sunflower seed crops and would only agree, in select cases, to partial compensation in the form of replacement sunflower seeds or seeds from other crops.

g.  Defendants also made both implicit and explicit representations on Dow's packaging and labeling that Variety 341 seeds were certified, first generation varieties grown in the United States which would provide predicable and expected product yields.

h.  Defendants made both implicit and explicit misrepresentations by failing to warn or advise consumers that Variety 341 sunflower seeds could develop and mature with defective embryo sacs and no seeds.

i.  On information and belief, Defendants received reports of flaws in Variety 341 sunflower seeds sold to other growers, including growers in adjoining regions in Russia and concealed the existence of this varietal flaw from Plaintiff and other growers and, instead, may have attempted to buy off individual growers with replacements seed which did not come close to full and complete compensation.

j.  When Defendants learned that sunflower seed growers were suffering financial losses because of the varietal 341 flaw, they quietly removed this variety from their marketing programs and web sites without disclosing the existence of the varietal flaw.

RESPONSE:  With respect to the material allegations of paragraph 57, Plaintiff's failure

to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants

without knowledge or information sufficient to form a belief about the truth of the Plaintiff's

allegations.

58.     Pursuant to I.C. 24-5-0.5-3(a), Defendants are liable for their unfair, abusive, and/or deceptive acts, omissions, and/or practices as well as Defendants' implicit and explicit misrepresentations both before, during, and after the transaction.

RESPONSE:   With respect to the material allegations of paragraph 58, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

59.     Defendants' conduct identified above are also violations of I.C. 23-5-0.5-3(b)(l) in that Defendants misrepresented that Variety 341 had performance, characteristics, accessories, uses, or benefits it did not have which Defendants knew or should reasonably have known it did not have.

RESPONSE:   With respect to the material allegations of paragraph 59, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

60.     Defendants' conduct identified above are also violations of I.C. 23-5-0.5-3(b)(2) in that Defendants misrepresented that Variety 341 was of a particular standard, quality, grade, style, or model, when it was not and Defendants knew or should reasonably have known that it was not.

RESPONSE:   With respect to the material allegations of paragraph 60, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

61.     Because Variety 341 is a hybrid sunflower seeds developed by crossing different types or "lines" of sunflower seeds, using sophisticated methods of pollination, Defendants, in selling Variety 341, made oral and written misrepresentations that Variety 341 was a commercially superior product as compared to an objective and independent standard, *to wit,* seeds that were not developed utilizing Defendants' processes.

RESPONSE:   With respect to the material allegations of paragraph 61, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

62.     Defendants' conduct identified above are also violations of I.C. 23-5-0.5-3(b)(8) in that Defendants misrepresented that the sale of Variety 341 involved or did not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, and Defendants knew or should reasonably have known that the representation was false.

RESPONSE:   With respect to the material allegations of paragraph 62, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants

without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations. Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

63.     The foregoing unconscionable and deceptive sales acts are in violation of the purposes and policies of the DCSA as set forth in I.C. 24-5-0.5-l(b)(2).

RESPONSE:   With respect to the material allegations of paragraph 63, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations. Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

64.     In addition, the foregoing unconscionable and deceptive sales acts constitute "incurable deceptive act[s]" with the meaning of I.C. 24-5-0.5-2(a)(8) as they were done by Defendants as part of a scheme, artifice, or devise with intent to defraud and mislead.

RESPONSE:   With respect to the material allegations of paragraph 64, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations. Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

65.     Plaintiff justifiably relied to their detriment on the foregoing incurable deceptive acts committed by Defendants and have suffered economic losses as a direct and proximate result of Defendants' conduct.

RESPONSE:   With respect to the material allegations of paragraph 65, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

66.     Pursuant to I.C. 24-5-0.5-4(a), Plaintiff is entitled to recover actual damages as well as Plaintiff's reasonable attorney's fees.

RESPONSE:   With respect to the material allegations of paragraph 66, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

67.     Defendants' conduct identified above also amounts to willful deceptive acts within the meaning of DCSA, I.C. 24-5-0.5-4(a).

RESPONSE:   With respect to the material allegations of paragraph 67, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the

23

source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

68.     Pursuant to I.C. 24-5-0.5-4(a)(l), given Defendants' willful deception, Plaintiff is entitled to recover treble Plaintiff s actual damages.

RESPONSE:   With respect to the material allegations of paragraph 68, Plaintiff's failure to plead these matters with the particularity required by Fed. R. Civ. P. 9(b) leaves Defendants without knowledge or information sufficient to form a belief about the truth of the Plaintiff's allegations.  Defendants further deny that the Indiana Deceptive Consumer Sales Act can be the source of any duties, rights, or remedies with respect to the transaction and circumstances alleged by Plaintiff.

## COUNT III - MAGNUSON-MOSS WARRANTY FEDERAL TRADE COMMISSION ACT

69.     Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if those averments were set forth herein in their entirety.

RESPONSE:   With respect to the material allegations of paragraph 69, Defendants repeat and reallege each response to each preceding paragraph as if set forth in full herein.

70.     Plaintiff is a "Consumer" as defined by 15 U.S.C. § 2301(3).

RESPONSE:   Defendants deny that Plaintiff is a consumer as defined by 15 U.S.C. § 2301(3) because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

71.     Each Defendant is a "Supplier" and a "Warrantor" as defined by 15 U.S.C. § 2301(4) & (5).

<u>RESPONSE:</u>   Defendants deny that either of them is a "Supplier" or "Warrantor" as defined by 15 U.S.C. § 2301(4) and (5) because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

72.     Dow's Variety 341 seeds are a "Consumer Product" as defined by 15 U.S.C. §2301(1).

<u>RESPONSE:</u>   Defendants deny that Variety 341 seeds are a "Consumer Product" as defined by 15 U.S.C. § 2301(1) because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

73.     One or more of the warranties given to Plaintiff by Defendant was a "Written Warranty" as defined by 15 U.S.C. §2301(6).

<u>RESPONSE:</u>   Defendants deny that either of them gave a warranty of any kind to Plaintiff and further deny that either of them gave Plaintiff a "Written Warranty" as defined by 15 U.S.C. § 2301(6) because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

74.     One or more of the warranties given to Plaintiff by Defendant was an "Implied Warranty" as defined by 15 U.S.C. §2301(7).

<u>RESPONSE:</u>   Defendants deny giving any warranty of any kind to Plaintiff, and further deny that any such "Implied Warranty" could have been one as defined by 15 U.S.C. § 2301(7) because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

75.     Defendants have been unable, unwilling and/or have refused to conform the Variety 341 seeds to the written and implied warranties by curing one or more nonconformities within a reasonable number of attempts or a reasonable amount of time.

RESPONSE:   Defendants deny that either of them gave a warranty of any kind to Plaintiff and further deny that the Act could be a source of any duty, right, or remedy, because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

76.     Plaintiff states that Defendant has been afforded a reasonable opportunity to cure the non-conformity pursuant to 15 U.S.C. §2310(e).

RESPONSE:   Defendants deny the material allegations of paragraph 76 and further deny that the Act could be a source of any duty, right, or remedy because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

77.     As a direct and proximate result of Defendants' failure to comply with its express written and implied warranties, Plaintiff has and continues to suffer damages.

RESPONSE:   Defendants deny that either of them gave any express written or implied warranties to Plaintiff and, consequently, deny the material allegations of paragraph 77.

78.     Pursuant to 15 U.S.C. §2310(d)(2), Plaintiff may recover costs, including reasonable attorney's fees based on actual time expended.

RESPONSE:   Defendants deny the material allegations of paragraph 78 because the Act specifically states that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

## ADDITIONAL AND AFFIRMATIVE DEFENSES

### FIRST ADDITIONAL DEFENSE

Counts I and II fail to state a claim upon which relief can be granted because Indiana choice-of-law rules forbid the application of Indiana statutory law in these circumstances.

26

## SECOND ADDITIONAL DEFENSE

Counts I and II fail to state a claim upon which relief can be granted because the extraterritoriality principle forbids the application of Indiana statutory law in these circumstances.

## THIRD ADDITIONAL DEFENSE

Count III fails to state a claim upon which relief can be granted because the Magnuson-Moss Warranty Federal Trade Commission Act expressly provides that "nothing in this chapter shall apply to seed for planting."  15 U.S.C. § 2311(a)(2).

## FOURTH ADDITIONAL DEFENSE

All of Plaintiff's claims fail to state a claim upon which relief can be granted because Plaintiff's allegations do not differentiate between Defendants' alleged acts and omissions and instead allege collective responsibility.

## FIFTH ADDITIONAL DEFENSE

Count II fails to state a claim upon which relief can be granted because it is not pleaded with the particularity required by Fed. R. Civ. P. 9(b).

## SIXTH ADDITIONAL DEFENSE

None of Plaintiff's claims state a claim upon which relief can be granted because it has not exhausted its contractual remedies with its seller.

## SEVENTH ADDITIONAL DEFENSE

Plaintiff has failed to join required parties, and because they are absent the Court cannot accord complete relief among the existing parties and, because their absence exposes the existing parties to a substantial risk of incoming double, multiple, or otherwise inconsistent obligations

because of the interests held by those absent parties relating to the subject matter of this action, this matter should be dismissed.

## EIGHTH ADDITIONAL DEFENSE

Plaintiff's alleged damages may have been caused by factors beyond the control, influence, or responsibility of the named Defendants.

## NINTH ADDITIONAL DEFENSE

Plaintiff has failed to act reasonably to mitigate its alleged damages.

*s/ Dean T. Barnhard*
Dean T. Barnhard (#4079-49)
Joseph G. Eaton (#15731-29)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:    317-236-1313
Facsimile:    317-231-7433
E-mail:       dean.barnhard@btlaw.com
              joe.eaton@btlaw.com

*Attorneys for Defendants*
*Dow AgroSciences LLC and*
*Agrigenetics, Inc. d/b/a Mycogen Seeds*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served this 31st

day of January, 2017 by electronic mail via the Court's ECF system to the following counsel of

record:

> Evan A. Burkholder
> evan.burkholder@leclairryan.com
>
> Jason M. Massaro
> jmassaro@tmlglaw.com

> *s/ Dean T. Barnhard* _____

DMS 4603811v1

29