UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AGROLIPETSK, LLC a Russian Limited Liability Company, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) No. 1:16-cv-03414-SEB-MPB ) |
| MYCOGEN SEEDS, DOW AGROSCIENCES LLC an Indiana Limited Liability Company, AGRIGENETICS, INC., | ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Dow AgroSciences, LLC ("DAS") and Agrigenetics, Inc. d/b/a Mycogen ("Mycogen") filed a motion for judgment on the pleadings [Dkt. No. 19] to which Plaintiff Agrolipetsk, LLC ("AGL") has objected.[1]

Plaintiff filed a three-count complaint against Defendants alleging breach of implied warranty under the Indiana Uniform Commercial Code (Count I), violation of the Indiana Deceptive Consumer Sales Act (Count II), and violation of the Magnuson-Moss Warranty Federal Trade Commission Act (Count III). Defendants contend that Plaintiff's claims fail as a matter of law because the Indiana statutes do not and cannot apply to these claims, that

---

[1] On March 10, 2017, Plaintiff filed a Motion for Leave to File a Surreply [Dkt. No. 30], to which Defendants have objected [Dkt. No. 31]. Defendants' Reply did not raise any arguments not previously made in its opening brief or Plaintiff's response, and for that reason the motion warrants denial. In any event, Plaintiffs' Motion for Leave proposes a surreply focused on choice-of-law arguments, which, as discussed below, are irrelevant. Accordingly, we DENY Plaintiff's Motion for Leave.

Plaintiff failed to plead fraud with the required specificity, and that the Magnuson-Moss Act does not apply here, among other reasons discussed below. We **GRANT** Defendants' Motion and allow Plaintiff to seek leave to amend its complaint with respect to Counts I and II.

## Facts

Plaintiff AGL is an agricultural and farming company operating in the Lipetsk region of Russia. One of its principle crops is sunflower seeds that it sells for consumer use. AGL alleges that Mycogen grows, markets, and sells a number of varieties of hybrid sunflower seeds on DAS's behalf. Among those hybrid sunflower seeds grown and sold in the United States by Defendants is Variety 341 (designated as 8H341CLDM) sold under the label "Dow".

Prior to March 2015, AGL had purchased Variety 341 seeds and successfully planted and harvested them in the Lipetsk region of Russia. In March 2015, pursuant to a written supply agreement, AGL purchased Variety 341 sunflower seeds from LLC Advag, an independent Russian agricultural firm who had purchased the seeds from BDA Capital, LLC. The sale did not include any written warranty limitations or written disclaimers issued by DAS and DAS was not a party to the written supply agreement between AGL and LLC Advag. AGL planted the Variety 341 seeds in the Lipetsk region of Russia over approximately 5,700 acres in late April and early May, 2015. Unlike its previous experiences, the Variety 341 sunflower plants developed with fully formed pericarps but empty embryo sacs; there were no sunflower seeds inside the flowers and consequently the flowers had no commercial value, rendering them effectively worthless. AGL suffered a

2

projected loss of approximately 90% of the yields in the affected fields. In its Amended Complaint, AGL alleges that Defendants admit responsibility for this loss, but have refused to compensate AGL.

According to AGL, although the Russian legal system and courts in the Lipetsk region process contract disputes, "Russian law does not recognize a right of recovery for a remote purchaser of commercial goods, such as Plaintiff who does not have a contractual agreement with the original seller of the commercial goods and is not in privity with an original seller of the commercial goods." [Am. Compl. ¶ 38.] As a result, says AGL, its only available remedy for the losses it has suffered is in a U.S. court exercising general jurisdiction over Defendants. [*Id.* ¶ 39.]

## Standard of Review for Judgment on the Pleadings

Defendants' motion under Federal Rule of Civil Procedure 12(c) seeks judgment on the pleadings based on the Amended Complaint's failure to state a claim upon which relief can be granted. The standard of review for a motion for judgment on the pleadings is identical to that applicable to a motion filed pursuant to Rule 12(b)(6). *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir. 1991). Therefore, once a claim has been adequately stated, it may be supported by any set of facts consistent with the allegations in the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 540, 561–62 (2007) (quoting *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)). Dismissal is warranted if the factual allegations, viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Twombly,* 550 U.S. at 561–62. However, as the Seventh Circuit has recognized, "it is not enough for a complaint to avoid foreclosing

possible bases for relief; it must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 777 (2007) (quoting *Twombly,* 550 U.S. at 561–62).

When determining whether judgment on the pleadings is proper, a court "may not look beyond the pleadings," *Wood,* 925 F.2d at 1581, but "must treat all well-pleaded allegations asserted in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the light most favorable to the plaintiff." *Jackson v. Arvinmeritor, Inc.,* 2008 WL 64528, at *1 (S.D. Ind. Jan. 3, 2008) (Hamilton, J.).

## Discussion

Defendants posit that AGL's claims fail for various reasons including the inapplicability of Indiana law, the extraterritorial reach of Indiana law, and pleading shortcomings. Although Defendants move for judgment on the pleadings, several of their challenges relate to the *manner* in which Plaintiff has set forth its claims, to wit, pleading collective defendant liability and failing to plead fraud with specificity as opposed to whether the factual allegations, viewed in the light most favorable to the Plaintiff, plausibly entitle Plaintiff to relief.

### I.     Indiana Statutory Claims, Counts I and II
#### A.     Choice of Law

Plaintiff asserts two Indiana statutory claims, to wit, Breach of Implied Warranty pursuant to Indiana's Uniform Commercial Code, Ind. Code § 26-1-2-101, *et seq.*, and violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1, *et seq.*

4

("IDCSA").  Defendants seek judgment on AGL's state statutory claims on the grounds that the substantive law of Indiana does not apply and Plaintiff's admission that the applicable law, Russian law, provides no right of recovery for the alleged harm.  Plaintiff rejoins that Indiana choice of law rules point to Indiana substantive law (or, if Russian law applies, *it* points to Indiana law) and its state statutory claims thus survive Defendants' motion.

The parties have taken us down a choice of law detour in their briefing.  A choice of law analysis is inapplicable to the claims Plaintiff asserts.  Plaintiff's claims are for violations of *Indiana* statutes, not Indiana common law.  "There is no doubt that Indiana law applies to a claim under an Indiana statute."  *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1166 (Ind. 2002); *see also Northern Trust Co. v. Peters*, 69 F.3d 123, 129-30 (7th Cir. 1995) (applying the substantive law of the United Kingdom, except as to claims brought under the Illinois Consumer Fraud Act and the Uniform Deceptive Trade Practices Act, to which the court applied Illinois law).  In *Allen*, the Indiana Supreme Court reversed a trial court's grant of summary judgment "on the ground that [plaintiff's Indiana statutory claims] were not applicable to claims governed by South Carolina law."  69 F.3d at 1161.  After considering the elements of the statutory claims asserted and concluding that the statute did not require the loss to occur in Indiana, the Court held, "[i]t was an error to grant summary judgment for [defendant] on the ground the statutes were inapplicable."  *Id.* at 1166.

Defendants rely heavily on the Seventh Circuit's decision in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002), contending that the place of

5

harm is Russia and not Indiana and specifically focusing on the appellate court's conclusion that "[i]f recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters." *Id.* at 1017. The *In re Bridgestone/Firestone* decision does not reference any statutory law upon which plaintiffs' claims were based. As noted above, "[t]here is no doubt that Indiana law applies to a claim under an Indiana statute." *In re Bridgestone/Firestone* is inapposite.

Although Russian law might apply to common law claims under these facts, Russian law is wholly inapplicable to claims made pursuant to Indiana *statutes*. Accordingly, we **DENY** Defendants' Motion for Judgment on the Pleadings based on its argument that Russian law applies to Indiana statutory claims.

### B. Pleading Fraud with Particularity

Defendants challenge Plaintiff's claim brought pursuant to the Indiana Deceptive Consumer Sales Act ("IDCSA") in its motion for judgment on the pleadings; however, in many respects, Defendants are actually challenging the manner in which Plaintiff has pled its fraud action. *See In re Van Quach*, 187 B.R. 615, 619 n.6 (Bankr. N.D. Ill. 1995). Because the IDCSA is an anti-fraud statute, Federal Rule 9(b) requires a plaintiff to identify the misrepresentation, the person making the misrepresentation, the time and place of the misrepresentation, and the method by which the misrepresentation was communicated to plaintiff. *See McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998) (holding that Indiana Trial Rule 9(B) applies to actions under the IDCSA that are grounded in fraud). Plaintiff's Amended Complaint falls well short of this mark.

6

Contending that it has alleged the requisite specificity to satisfy Rule 9(b), Plaintiff cites paragraph 57 in its Amended Complaint. But only one subpart of paragraph 57 contains any specificity with regard to material misrepresentations of past or existing facts made by DAS and/or Mycogen, and it provides:

> 57. Defendants' unfair, abusive, and/or deceptive acts, omissions, and/or practices as well as Defendants' implicit and explicit misrepresentations include, *inter alia*, the following, all if [sic] which occurred on information and belief prior to the sale of the Variety 341 seeds complained of herein:
>
> . . .
>
> e. Despite Defendants' failure to conduct the above-mentioned pre- and post-production testing, Defendants advertised Variety 341 seeds on its websites and made both implicit and explicit misrepresentations of a past or existing fact regarding, *inter alia*, (1) the absence of known defects and the results of testing, (2) that Variety 341 seeds were merchantable, of fair and average quality, and would provide expected and predictable results, up to and including predictable product yields.

[Am. Compl. ¶ 57.] Contrary to Plaintiff's contention, paragraph 57 does not identify who made the alleged material misrepresentation, referring instead "defendants" generally, thus failing to identify which of the two defendants is responsible for the alleged misrepresentation. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Even more problematic, paragraph 57 does not contain the "what" of the alleged fraud. Plaintiff cannot satisfy its high pleading obligation by alleging generally that Defendants misrepresented "the absence of known defects and the results of testing." Similarly, AGL has not provided a time frame within which or otherwise specifying when the alleged misrepresentations were made.

7

Defendants are entitled to insist on a greater level of specificity in the Complaint regarding the who, what, when, where, and how of the alleged fraud.

Because Plaintiff has failed to plead its Indiana Deceptive Consumer Sales Act claim against DAS and Mycogen with the particularity required by Fed. R. Civ. P. 9(b), Defendants' motion for judgment on the pleadings is **GRANTED** and Count II of the Amended Complaint is **DISMISSED**. Plaintiff shall have twenty-one (21) days from the date of this order either to file and serve a motion for leave to file an amended complaint, with the proposed complaint attached, that satisfies the particularity requirement of Rule 9(b), or to dismiss this action.[2]

### C. Extraterritoriality Prohibition

Defendants argue that Plaintiff's Indiana statutory-based claims fail as a matter of law on the extraterritoriality principle. The extraterritoriality principle provides that a state cannot legislate outside its own jurisdiction. *Dean Foods Co. v. Brancel*, 187 F.3d 609, 615 (7th Cir. 1999) ("There is a long line of cases holding that states violate the Commerce Clause by regulating or controlling commerce occurring wholly outside their own borders.") (citing *National Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 658 n. 8 (7th Cir. 1995) (collecting cases)).

---

[2] In allowing Plaintiff an opportunity to file a motion to amend its complaint in an attempt to remedy its pleading shortcomings, we remind Plaintiff of its own acknowledgment that "[a] complaint based on [a] theory of collective responsibility must be dismissed." [Dkt. No. 27 at 11 (quoting *Bank of Am. v. N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).] Contrary to Plaintiff's contention, Defendants have not waived any defense that collective responsibility allegations are grounds for dismissal. Plaintiff should take into account these arguments and admissions if it submits an amended complaint. *See Knight*, 725 F.3d at 818 ("Each defendant is entitled to know what he or she did that is asserted to be wrongful.").

The parties' extraterritoriality arguments with respect to Plaintiff's breach of implied warranty claim are limited and general.[3] Defendants argue that "Indiana's General Assembly lacks the power and authority to endow a Russian plaintiff with Indiana statutory rights and remedies with respect to a sale consummated between Russian companies in Russian that resulted in financial loss in Russia." [Dkt. No. 20 at 12.] Countless cases interpreting and applying the Dormant Commerce Clause prohibit states from regulating commerce wholly outside their own state. *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 903-04 (S.D. Ind. 2009) (citations omitted). Plaintiff rejoins, sidestepping all of its own allegations of conduct occurring in Russia, arguing that "[a] federal court sitting in Indiana and exercising diversity jurisdiction can without question enforce Indiana's laws where the conduct complained of *was committed in state by an Indiana company*." [Dkt. No. 27 at 9 (emphasis added).]

It is unclear from the face of the Amended Complaint *where* Plaintiff alleges that the violative conduct of DAS/Mycogen took place. The Amended Complaint references Indiana in limited fashion, noting simply that Indiana is the location of DAS's and Mycogen's principle places of business [Am. Compl. ¶¶ 4-7] and that Plaintiff sent an email to DAS's chief executive officer at DAS's headquarters in Indianapolis [*id.* ¶ 30].

---

[3] The parties engage in a much more detailed analysis of the extraterritorial limitation in reference to Plaintiff's IDCSA claim, including a fifteen-page deep-dive into the history and purpose of the IDCSA supplied by Plaintiff. As explicated above, we are dismissing the IDCSA claim on the grounds that it lacks the requisite specificity. This conclusion is further supported by the fact that Plaintiff does not identify *where* the alleged wrongful conduct occurred, a fact critical to any defense of prohibited extraterritorial application (and fraud). Because the IDCSA claim is being dismissed, we need opine no further on the extraterritorial implications of Plaintiff's claim at this time.

With the exception of these two allegations, Plaintiff has not alleged that any activity related to its causes of action occurred in Indiana. Plaintiff's defense of its Complaint is based on the false assertion that it has alleged that Defendants' wrongful acts occurred in Indiana. Acknowledging that our review of Plaintiff's claims in this context requires that we construe the factual allegations in the light most favorable to Plaintiff, we nonetheless cannot draw inferences based on factual contentions that are not contained in the pleadings. Without an allegation that Defendants' complained-of conduct occurred in Indiana, there is no nexus connecting the alleged wrongful conduct to the State of Indiana. We, therefore, reject Plaintiff's conclusion that "[t]he most reasonable inference from the well-pled allegations in the Amended Complaint is that Mycogen designed the hybrid seeds in Indiana, and then sold them to exporters who in turn re-sold them to an independent Russian distributor." [Dkt. No. 27 at 9 (emphasis removed).]

Accordingly, we **GRANT** Defendants' Motion and Count I of the Amended Complaint is **DISMISSED.** Plaintiff shall have twenty-one (21) days from the date of this order either to file and serve a motion for leave to file an amended complaint, with the proposed revised complaint attached, that alleges the location of the alleged wrongful conduct that Plaintiff contends violated the Indiana statutes, or dismiss its claim.

### III.    Magnuson-Moss Act (Count III)

Plaintiff's third cause of action is based on the Magnuson-Moss Warranty Federal Trade Commission Act, 15 U.S.C. § 2301, *et. al.* ("Magnuson-Moss Act"). The purpose of the Magnuson-Moss Act is to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer

products." 15 U.S.C. § 2302(a). To this end, the Act imposes requirements on warranties provided for consumer products. Plaintiff has alleged that "Defendants have . . . refused to conform the Variety 341 seeds to the written and implied warranties" as required by the Magnuson-Moss Act. [Am. Compl. ¶ 75.]

Defendants' motion for judgment on the pleadings as to Count III of the Amended Complaint is based on a straightforward application of exclusionary language in the Magnuson-Moss Act. According to Defendants, because the Magnuson-Moss Act "expressly declares that 'nothing in this chapter shall apply to seed for planting' . . . DAS and Mycogen are entitled to judgment on the pleadings against Agrolipetsk's Magnuson-Moss Act claim." [Dkt. No. 20 at 12 (quoting 15 U.S.C. § 2311(a)(1)(2) ("Nothing in this chapter shall be construed to repeal, invalidate, or supersede the Federal Seed Act and nothing in this chapter shall apply to seed for planting."))]. Neither party points to any legal precedent applying or interpreting this provision and we could find none.

AGL's defense to Defendants' argument is that the exclusionary provision does nothing more than make "it clear that the MMWA does not create entirely new causes of action beyond the scope of the violations covered by the [Federal Seed Act]." [Dkt. No. 27 at 11.] According to AGL, because the Federal Seed Act provides for causes of action for "sunflower seeds," the exclusionary provision does not bar its Magnuson-Moss Act claim. AGL's argument is circular at best. The exclusionary provision in the Magnuson-Moss Act explicitly does not limit the Federal Seed Act in any way, and it also expressly limits the application of the *Magnuson-Moss Act* to seed for planting. The Magnuson-

11

Moss Act says nothing with regard to the application of the Federal Seed Act to seed for planting.

"The Supreme Court has repeatedly instructed that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"  *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543-44 (7th Cir. 2003) (citing *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)) (internal citations and quotation marks omitted).  The parties do not contend that any ambiguity exists in the exclusionary language and we find no ambiguity in that provision.  The Magnuson-Moss Act does not apply to "seed for planting".[4]  AGL's Magnuson-Moss Act claim is based on an alleged breach of warranty related to Variety 341 sunflower *seeds*.  Applying the plain exclusionary language, we conclude that Plaintiffs' Magnuson-Moss Act claim fails to state a claim upon which relief can be granted and **GRANT** Defendants' Motion for Judgment on the Pleadings as to Count III of the Amended Complaint.

## Conclusion

For the foregoing reasons we **GRANT** Defendants' Motion for Judgment on the Pleadings.  With respect to Counts I and II, Plaintiff shall have twenty-one (21) days from

---

[4] AGL does not contend that the Variety 341 seeds are not "seed for planting" as that term is used in the Magnuson-Moss Act.  AGL states that the Federal Seed Act defines sunflower seeds as seeds "for seeding purposes."  [Dkt. No. 27 at 11.]  There is no evidence that the Federal Seed Act's definition of sunflower seeds is controlling when applying the Magnuson-Moss Act or that the differing verbiage makes any difference.

the date of this order either to file and serve a motion for leave to file an amended complaint, with proposed complaint attached, or to dismiss this action.

Date: _____6/5/2017_____  _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Dean T. Barnhard
BARNES & THORNBURG LLP
dean.barnhard@btlaw.com

Joseph Gregory Eaton
BARNES & THORNBURG LLP
joe.eaton@btlaw.com

Evan A. Burkholder
LECLAIR RYAN
evan.burkholder@leclairryan.com

Jason M. Massaro
THE MASSARO LEGAL GROUP LLC
jmassaro@tmlglaw.com