UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AGROLIPETSK, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:16-cv-03414-SEB-MPB |
| MYCOGEN SEEDS, et al. | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S DENIAL OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. 47)**

Plaintiff Agrolipetsk ("Agrolipetsk"), a Russian limited liability company, sued Defendants Dow AgroSciences ("Dow"), a Delaware limited liability company, and Agrigenetics (doing business as "Mycogen Seeds"), a Delaware corporation, both having their principal places of business in Indiana, in connection with the sale by Defendants to Agrolipetsk of an allegedly defective variety of hybrid sunflower seed, "Variety 341." Dkt. 12. Following dismissal without prejudice of its first amended complaint on Defendants' motion for judgment on the pleadings, *see* Fed. R. Civ. P. 12(c), Agrolipetsk moved for leave to file a second amended complaint. Dkt. 36. *See* Fed. R. Civ. P. 15(a)(2).

We referred the motion to Magistrate Judge Matthew P. Brookman, who found that Agrolipetsk's proposed complaint ("Proposed Complaint" or "PC") would not survive a motion to dismiss for failure to state a claim on which relief could be granted, *see* Fed. R. Civ. P. 12(b)(6). He therefore denied the motion as futile. Dkt. 46 ("Entry").

1

Agrolipetsk has now appealed from that ruling by timely objection. Dkt. 47. *See* Fed. R. Civ. P. 72.

For the reasons explained below, Agrolipetsk's objections are sustained in part and overruled in part.

**Background**

The factual background of this case is fully set out in our order on Defendants' motion for judgment on the pleadings, Dkt. 35, and in Judge Brookman's ruling. We will address particulars as necessary below.

**Standard of Review**

A magistrate judge's ruling on nondispositive matters will not be set aside by the district judge unless clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A magistrate judge's report and recommendation on a dispositive motion is reviewed by the district judge *de novo*. Fed. R. Civ. P. 72(b)(3).

Dow contends that the Seventh Circuit has held that a motion for leave to file an amended complaint is a nondispositive matter for these purposes, and the magistrate judge's ruling on such motion is therefore entitled to deferential review under Rule 72(a), even if denial will end the case as a practical matter for want of live claims to prosecute. Br. Opp. 6–7 (citing *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006); *Elder Care Providers of Ind., Inc. v. Home Instead, Inc.*, No. 1:14-cv-01894-SEB-MJD, 2017 WL 4250107, at *1 (S.D. Ind. Sept. 26, 2017) (Barker, J)).

We are unaware of such a holding. *Hall* affirmed a magistrate judge's denial of a motion for leave to file an amended complaint which had been reviewed by the district

2

judge under Rule 72(a). The court of appeals pointed out that denial "did not terminate [plaintiff's] existing lawsuit against [defendant], it merely prevented him from adding [a second defendant]." 469 F.3d at 595. Similarly, in *Elder Care*, we applied *Hall* to a case where denial did not end the lawsuit; it merely prevented plaintiff from adding a new claim. 2017 WL 4250107, at *1. In *Schur v. L.A. Weight Loss Centers, Inc.*, the Seventh Circuit left open "whether a motion to join a nondiverse defendant whose joinder would destroy the court's diversity jurisdiction is 'dispositive[.]'" 577 F.3d 752, 760 n.6 (7th Cir. 2009). The question appears to be open still. *See Clymer v. Wal-Mart Stores, Inc.*, No. 1:15-cv-00300-JTM-SLC, 2016 WL 3580487, at *1 n.1 (N.D. Ind. May 20, 2016). In other words, it is far from settled that a formal, rather than a functional, approach governs the choice between Rule 72(a) and Rule 72(b).

That choice will not make a difference in this case, though, and so we need not pursue it to conclusion. Assuming Rule 72(a) supplies the correct standard, "[r]egarding legal issues, the language 'contrary to law' appears to invite plenary review." 12 Charles Alan Wright & Arthur R. Miller *et al.*, *Federal Practice and Procedure* § 3069 (3d ed. 2014). "'[F]or questions of law there is no practical difference between review under Rule 72(a)'s contrary to law standard and a de novo standard.'" *CertusView Techs., LLC v. S & N Locating Servs., LLC*, 107 F. Supp. 3d 500, 504 (E.D. Va. 2015) (quoting *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014)). *See also Elder Care*, 2017 WL 4250107, at *2 (quoting *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols. LLC*, No. 1:13-CV-00133-RLY-DKL, 2014 WL 958464, at *3 (S.D. Ind. Mar. 12, 2014)) ("An order is contrary to law when it 'fails to apply *or misapplies* relevant statutes, case law, or

3

rules of procedure.'" (emphasis added)). And Judge Brookman's ruling that the Proposed Complaint would not survive a Rule 12(b)(6) motion clearly presents a question of law. *E.g., Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). We will therefore review it as such.

## **Analysis**

The Proposed Complaint contains two counts for breach of warranty under the Uniform Commercial Code as adopted by Indiana ("UCC"), one each against Dow and Mycogen Seeds (Counts I, II), and two counts for incurable deceptive acts under Indiana's Deceptive Consumer Sales Act ("Deceptive Sales Act"), similarly allocated (Counts III, IV). There is also one count for uncured deceptive acts under the Deceptive Sales Act against Dow only (Count V).

Judge Brookman ruled that Counts III and IV as pleaded would not meet the applicable pleading standards, *see* Fed. R. Civ. P. 8(a), 9(b), except for one specific theory of liability, the "quiet recall" theory, which Defendants had not challenged and therefore survived the Rule 8 and Rule 9 analyses by default. *See* Entry 14. Judge Brookman ruled further that Count V would necessarily fail for lack of statutorily required notice. Finally, as to Counts I, II and the "quiet recall" theory of Counts III and IV, Judge Brookman ruled that "this case's nexus with Indiana is too thin to overcome the presumption against extraterritoriality and to satisfy the requirements of due process[,]" barring the application of Indiana law to the conduct complained of. Entry 17.

Agrolipetsk objects to Judge Brookman's Rule 8 and Rule 9 analyses in several particulars, and to the entirety of Judge Brookman's extraterritoriality analysis.

4

## I. Agrolipetsk's Objections Are Overruled As to Its Noncompliance with Applicable Pleading Standards

First, Judge Brookman correctly ruled that an allegation of knowledge prior to August 15, 2015, is not a plausible or particularized allegation of knowledge prior to early March 2015. For incurable deceptive acts, the Deceptive Sales Act requires "intent to defraud or mislead." Ind. Code § 24-5-0.5-2(8); *McKinney v. Indiana*, 693 N.E.2d 65, 68 (Ind. 1998). The Proposed Complaint alleges that Agrolipetsk purchased the Variety 341 seeds complained of in early March 2015, and that, "on or about August 15, 2015," a Dow sales representative admitted to an Agrolipetsk employee that Dow "had already encountered defective sunflower plant issues with Variety 341 on other farms." PC ¶ 49. This allegation, either by itself or in conjunction with others in the Proposed Complaint, does not raise a nonspeculative inference that Dow had been informed of problems with Variety 341 before Agrolipetsk purchased its seeds in early March 2015, but failed to disclose those problems to Agrolipetsk, in turn giving rise to an inference of intent to defraud or mislead it.

We agree with Agrolipetsk that neither Rule 8(a) or Rule 9(b) impose a probability requirement, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that references to "equal plausibility" do not state the correct standard. *Compare, e.g., Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) (complaint for securities fraud subject to Private Securities Litigation Reform Act must raise inference of corporate scienter "as cogent as the opposing inference"). But an ultimately correct conclusion is not defeated by the use of one infelicitous expression in reaching it.

Second and third (because this covers Agrolipetsk's second and third objections), Judge Brookman correctly ruled that Agrolipetsk cannot plead "information asymmetry" in justification of its bootstrapping argument that, because something went wrong with Agrolipetsk's batch of Variety 341 seeds, therefore what went wrong was the result of Defendants' failure to adequate develop and test Variety 341. Br. Supp. 6. The problems Agrolipetsk experienced with its batch of Variety 341 seeds are of course "'consistent with'" Defendants' Deceptive Sales Act liability, but that "'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). And even if this were enough to satisfy Rule 8(a), it would fall far short of satisfying Rule 9(b)'s particularity requirement.

Fourth, Judge Brookman correctly ruled that a communication from a Dow employee in response to Agrolipetsk's complaints stating that Dow would "offer . . . Free of Charge products for multiple reasons internal and external and . . . [would] not be in a position to offer any financial compensation[,]" PC ¶ 87, is not a plausible or particularized allegation of a "corporate policy to violate Indiana statutes by refusing to pay financial compensation." *Id.* at 20 (initial capitals omitted). Again, the quoted communication is consistent with the existence of such a policy. But neither the quoted communication nor other factual allegations in the Proposed Complaint raise its existence "beyond the speculative level[.]" *Twombly*, 550 U.S. at 555.

Fifth, Judge Brookman correctly ruled that the communication of an Agrolipetsk employee to a Dow employee stating that "[s]ome sunflower heads [of sunflowers grown

6

from Variety 341 seeds] [were] almost empty, some [had] strange black/white heads[,]" PC Ex. 7, *cited at* PC ¶ 120, did not "state fully the nature of the alleged deceptive act" as required by the Deceptive Sales Act. Ind. Code § 24-5-0.5-5(a). The failure of the sunflowers to grow properly was surely a bitter fruit of Defendants' deceptive acts, if any there were. But that is not necessarily applicable to the tree that bore that fruit. The deceptive act charged by Agrolipetsk, in its own words, was an act of misrepresentation. Br. Supp. 16. No mention of such an act, or of any *deceptive* act, is made in the communication cited by Agrolipetsk. "[A]t most, it describes a breach of warranty by Defendants." Entry 13. But "[n]ot every breach of contract is a deceptive act or omission" under the Deceptive Sales Act. *Id.*

## II. Agrolipetsk's Objections Are Sustained As to Defendants' Extraterritoriality Defenses

In this alienage case, as in diversity cases, Indiana's substantive law applies, including its choice of law rules. *Atl. Cas. Ins. Co. v. Garcia*, 878 F.3d 566, 569 (7th Cir. 2017) (diversity); *Maternally Yours, Inc. v. Your Maternity Shop*, 234 F.2d 538, 540 n.1 (2d Cir. 1956) ("[I]t is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law."). To Agrolipetsk's attempt to invoke the protections of Indiana law, Defendants oppose the negative or "dormant" component of the Foreign Commerce Clause, U.S. Const. art. I., § 8, cl. 3, the Due Process Clause of the Fourteenth Amendment of the Constitution, U.S. Const. amend. XIV, § 1, cl. 3, and the presumption against extraterritoriality.

The dormant Foreign Commerce Clause, like the dormant Interstate Commerce Clause, *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 668 (7th Cir. 2010), prohibits a state from regulating commerce beyond its borders. *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 69 (1st Cir. 1999). The Due Process Clause of the Fourteenth Amendment requires, "for a State's substantive law to be selected in a constitutionally permissible manner, [that] that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981) (plur.) (citing *inter alia Home Ins. Co. v. Dick*, 281 U.S. 397 (1930) (Brandeis, J.)). Finally, the presumption against extraterritoriality is "a canon of statutory construction" which holds that "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2100 (2016) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)).

To answer whether Indiana law may apply to this case, we first must ask to what conduct or transactions Agrolipetsk's causes of action are directed.

 A. *Breach of Warranty*

Counts I and II charge breach of an implied warranty of merchantability. It would have been more analytically sensible, in our view, and clarifying of the present inquiry, if the parties had first asked Judge Brookman whether and to what extent under ordinary choice of law principles Indiana *would* choose to apply its law, before asking whether and to what extent Indiana *could* do so. Any answer to the former question would require

8

findings as to Indiana's actual contacts with this case, *see Garcia*, 878 F.3d at 569 (applying Second Restatement of Conflict of Laws as adopted in Indiana to contract case), clearing the ground for the constitutional inquiries outlined above, and a negative answer would moot Defendants objections. But we take the case as it has come to us, and Defendants, who would bear the burden of showing their entitlement to dismissal on a Rule 12(b)(6) motion, must bear the risk of loss from an underdeveloped record.[1]

To maintain such a claim, Indiana does not require vertical privity of contract between plaintiff buyer and defendant seller. *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 948 (Ind. 2005). That means plaintiff buyer may bring an action "against a vendor in the purchaser's distribution chain who is not the purchaser's immediate seller." *Id.* at 952 (citation omitted). Though Defendants in Indiana are connected by a chain of contracts to Agrolipetsk in Russia, there are several links in between them. If the law required vertical privity (as Russian law apparently does, *see* Entry 17; PC ¶ 55), Agrolipetsk could look for relief only to the immediately preceding link in the chain, and could only claim breach of a warranty made by *it* to Agrolipetsk. Under Indiana law, by contrast, Agrolipetsk is the rightful beneficiary of Defendants' warranties.

The upshot, then, is this. If a warranty is made in Indiana by a company headquartered in Indiana, and breached as soon as made (because the goods to be sold and warranted to be merchantable in fact were not), the Constitution erects no barrier to

---

[1] To be clear, Agrolipetsk bears the burden of persuasion on its motion for leave to file an amended complaint. But, Defendants having invoked futility of amendment in opposition to Agrolipetsk's motion, we must consider whether amendment would in fact be futile by viewing the case as it would stand had Defendants in fact moved under Rule 12.

its enforcement in an Indiana court under Indiana law, no matter where the chain of contracts happens to terminate, and no matter the domicile of the party seeking enforcement.

As for the Foreign Commerce Clause, enforcement of a warranty made and breached within Indiana's borders does not come within its prohibition on extraterritorial commercial regulation. As for the Due Process Clause, there is nothing arbitrary or unfair in applying the law of the place of contract to a contractual dispute, *see Dick*, 281 U.S. 407–410, nor in applying the law of a jurisdiction to a defendant who has "at all times [been] present and doing business" there. *Hague*, 449 U.S. at 317. Finally, as for the presumption against extraterritoriality, no act of Congress is at issue here, and there is nothing extraterritorial about Indiana law enforcing Indiana warranties.

True, it is said that "[t]he implied warranty of merchantability is imposed by operation of law for the protection of the buyer[.]" *Gared Holdings, LLC v. Best Bolt Prods., Inc.*, 991 N.E.2d 1005, 1013 (Ind. Ct. App. 2013) (citing *Woodruff v. Clark Cty. Farm Bureau Coop. Ass'n*, 286 N.E.2d 188, 194–95 (Ind. Ct. App. 1972)). *Hyundai* is an example of this: an Indiana court imposed liability under Indiana law on a foreign seller in favor of Indiana buyers. *See* 822 N.E.2d at 948–51. And Indiana has no interest *per se* in protecting foreign buyers. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982), *cited in* Dkt. 42, at 15, 21.

Nevertheless, Indiana could not fail to accommodate the converse of *Hyundai*, refusing to make a foreign buyer whole in favor of protecting a domestic seller, or no foreign buyers would ever deal with Indiana sellers in the knowledge that their warranties

would not be honored there. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 143 (1970) (state's "surely legitimate" interest in commercial reputation of domestic business). What is more, such facially discriminatory treatment of foreign plaintiffs appears likely to offend the nondiscrimination principles embodied in the Commerce Clauses. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551, 554 (7th Cir. 2007) (facial discrimination "clearest case" of dormant Interstate Commerce Clause violation).

There remains a factual question as to whether the warranty sued on was made in Indiana. Judge Brookman concluded that such has been adequately pleaded by Agrolipetsk. Entry 17 ("[I]n this case, [state law is] not invoked to regulate conduct occurring outside of Indiana or to impose liability on persons outside of Indiana."). "Under Indiana law, 'a contract is deemed to have been made in the state where the last act necessary to make it a binding agreement takes place.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Standard Fusee Corp.*, 940 N.E.2d 810, 817 n.6 (Ind. 2010) (original alteration, internal quotation marks omitted) (quoting *W.H. Barber Co. v. Hughes*, 63 N.E.2d 417, 421 (Ind. 1945)). We find nothing in the Proposed Complaint, Defendants' arguments, or the extrinsic evidence submitted on the instant motion to controvert the reasonable inference from the Proposed Complaint that the warranty was executed in Indiana. *See* P.C. ¶¶ 61, 72. To the extent the extrinsic evidence raises disputes of fact, those disputes are not to be resolved on a motion to dismiss.

Moreover, while Defendants offered extrinsic evidence to aid Judge Brookman's ruling, they did not, perhaps tellingly, offer the most relevant piece of it: the first contract in the chain, that between Defendants and Dow's Swiss affiliate. A contractual choice-of-

law clause selecting the law of Indiana or another jurisdiction to govern the contract would be material to the questions raised here, *see Dick*, 281 U.S. at 407, but neither party has addressed the issue.

Defendants point to *Richardson's RV Inc., v. Indiana Department of State Revenue*, in which the Indiana Tax Court held that Indiana could not levy a sales tax on a sale of goods where the goods had been delivered out of state and title to the goods had therefore passed to the buyer out of state. 80 N.E.3d 293, 296–98 (Ind. T.C. 2017). The court held "that as a matter of law the sales transactions at issue were not made 'in Indiana.'" *Id.* at 298. This authority, however, is not in point.

> A distinction must here be drawn between a contract for the sale of an interest in a chattel and the actual transfer of such an interest. A contract to sell an interest in a chattel may be valid as a contract but inoperative as a transfer, or, in the alternative, it may be invalid as a contract but operative as a transfer.

Restatement (Second) of Conflict of Laws § 191 cmt. a (Am. Law Inst. 1971). And, as indicated above, both the (still unanswered) choice-of-law question, and the question of the constitutional limits on such choice, depend on where the contract is to be localized, not on where the transfer of title is to be localized.

Finally, we agree with Agrolipetsk that the Supreme Court's decisions in *RJR Nabisco* and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), do not dictate a ruling in Defendants' favor for the reasons set out in Agrolipetsk's objections.

B.   *Incurable Deceptive Acts*

Counts III and IV charge incurable deceptive acts under the Deceptive Sales Act. While the bulk of the allegations in the Proposed Complaint as to these counts failed to satisfy Judge Brookman's Rule 8(a) and Rule 9(b) analyses, Judge Brookman found that one theory of liability survived by default—only to be defeated by the extraterritoriality problems raised by Defendants. Specifically, Judge Brookman found that Agrolipetsk had adequately alleged an incurable deceptive act Defendants had accomplished "by 'quietly' removing information regarding Variety 341 from their websites and their marketing programs without disclosing the alleged varietal flaw[,]" in effect a "quiet recall" of Variety 341. Entry 14–15.

Again, the more sensible course would have been for the parties first to consider whether Indiana *would* apply its law to such a claim. In tort cases, Indiana adheres to a modified version of the rule of *lex loci delicti*, that is, *lex loci damni*, the law of the place of injury. *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1079 (S.D. Ind. 2001) (Barker, J.) (citing *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073–74 (Ind. 1987)). To the extent Deceptive Sales Act claims sound in tort, it appears implausible that Indiana would permit recovery under the Deceptive Sales Act for injury suffered in Russia.

Nevertheless, to the extent that Indiana would apply the Deceptive Sales Act to the conduct alleged in the Proposed Complaint, the doctrines invoked by Defendants would not bar its application. As Judge Brookman observed, here the Deceptive Sales Act is "not invoked to regulate conduct occurring outside of Indiana or to impose liability on

persons outside of Indiana." Entry 17. If a "quiet recall" was in fact effected from Dow's Indianapolis headquarters as alleged, and such recall is otherwise actionable, there is nothing extraterritorial about Indiana imposing liability for tortious conduct occurring within its own borders.

**Conclusion and Order**

For the reasons explained above:

Agrolipetsk's objections to Judge Brookman's ruling are OVERRULED as to Counts III, IV, and V, excepting the "quiet recall" theory of Counts III and IV.

Agrolipetsk's objections to Judge Brookman's ruling are SUSTAINED as to Counts I, II, and the "quiet recall" theory of Counts III and IV.

Leave is hereby GRANTED to Agrolipetsk to file its Proposed Complaint as to Counts I, II, and the "quiet recall" theory of Counts III and IV.

Defendants will not be heard to relitigate issues raised, fully briefed, and decided in this order (but only those issues) on a future Rule 12(b)(6) or 12(c) motion directed to the Proposed Complaint. They may seek reconsideration of our rulings here, if they wish, in the ordinary course.

IT IS SO ORDERED.

Date: 9/25/2018

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Dean T. Barnhard
BARNES & THORNBURG LLP (Indianapolis)
dean.barnhard@btlaw.com

Evan A. Burkholder
LECLAIR RYAN
evan.burkholder@leclairryan.com

Joseph Gregory Eaton
BARNES & THORNBURG LLP (Indianapolis)
joe.eaton@btlaw.com

Jason M. Massaro
THE MASSARO LEGAL GROUP LLC
jmassaro@tmlglaw.com